CALVIN KLEIN LTD.,
Plaintiff–Appellee,

v.

TRYLON TRUCKING CORP.,
Defendant–Appellant.

No. 46, Docket 89–7363.

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1989.
Decided Dec. 15, 1989.

John P. D'Ambrosio, Irvington, N.Y., for plaintiff-appellee.

Edward Farman, New York City (Schindel, Cooper & Farman, of counsel), for defendant-appellant.

Before WINTER, MINER and ALTIMARI, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Trylon Trucking Corp. ("Trylon") appeals from a judgment entered on April 10, 1989 in the United States District Court for the Southern District of New York (Brieant, Ch.J.) in favor of plaintiff-appellee Calvin Klein Ltd. ("Calvin Klein") for the full value of a lost shipment of clothing. The appeal presents a novel issue under New York law: whether a limitation of liability agreement between a shipper and a carrier is enforceable when the shipment is lost as a result of the carrier's gross negligence.

The district court held that the parties' customary limitation of liability agreement did not extend to the shipment at issue, due to the absence of assent and consideration. The court observed that, had there been such an agreement, the liability of the carrier for its gross negligence would be limited. For the reasons that follow, we reverse the judgment of the district court, find that the parties agreed to the limitation of liability, and determine that the agreement limits Trylon's liability for its gross negligence.

## BACKGROUND

The parties have stipulated to the relevant facts in this case. Trylon is a New Jersey trucking firm which engaged in the business of transporting goods from New York City's airports for delivery to its customers' facilities. Calvin Klein, a New York clothing company, had used the services of Trylon for at least three years, involving hundreds of shipments, prior to the lost shipment at issue. In past deliveries Calvin Klein, through its customs broker, would contact Trylon to pick up the shipment from the airport for delivery to Calvin Klein's facility. After completing the carriage, Trylon would forward to Calvin Klein an invoice, which contained a limitation of liability provision as follows:

> In consideration of the rate charged, the shipper agrees that the carrier shall not be liable for more than $50.00 on any shipment accepted for delivery to one consignee unless a greater value is declared, in writing, upon receipt at time of shipment and charge for such greater value paid, or agreed to be paid, by the shipper.

A shipment of 2,833 blouses from Hong Kong arrived at John F. Kennedy International Airport for Calvin Klein on March 27, 1986. Calvin Klein arranged for Trylon to pick up the shipment and deliver it to Calvin Klein's New Jersey warehouse. On April 2, Trylon dispatched its driver, Jamahl Jefferson, to pick up this shipment. Jefferson signed a receipt for the shipment from Calvin Klein's broker. By April 2, the parties discovered that Jefferson had stolen Trylon's truck and its shipment. The shipment never was recovered. Calvin Klein sent a claim letter to Trylon for the full value of the lost blouses. In the absence of any response by Trylon, Calvin Klein on November 14, 1986 filed this action invoking diversity and Interstate Commerce Act jurisdiction against Trylon to recover $150,000, allegedly the value of the lost shipment. See 28 U.S.C. § 1332 (1982); 49 U.S.C.App. § 11707(d)(1) (1982 & Supp. V 1987).

In their stipulation in lieu of a jury trial, the parties agreed that Trylon is liable to Calvin Klein for the loss of the shipment and that Trylon was grossly negligent in the hiring and supervision of Jefferson. They also agreed that "[t]he terms and conditions of [Trylon]'s carriage [were]

that liability for loss or damage to cargo is limited to $50 in accordance with the legend on Trylon's invoice forms." Calvin Klein conceded that it was aware of this limitation of liability, and that it did not declare a value on the blouses at the time of shipment.

The parties left at issue whether the limitation of liability clause was valid and enforceable. Calvin Klein argued in the district court, as it does here, that the limitation clause was not enforceable for two reasons: no agreement existed between Calvin Klein and Trylon as to the limitation of liability; and, if such an agreement existed, public policy would prevent its enforcement because of Trylon's gross negligence.

The district court applied New York law, finding that the carriage was exempt from the Interstate Commerce Commission's jurisdiction, being entirely within the New York City commercial zone, *see* 49 U.S.C. App. § 10526(b)(1) (1982 & Supp. V 1987). The court held that the "assent of the shipper is necessary to effect such a limitation on liability," and that the assent may be indicated orally, in writing, or by prior acceptance of invoices which include the limitation clause. The court noted that, in the course of dealings between the parties, Calvin Klein had accepted Trylon's invoices, which included the limitation clause. There was no invoice for the carriage at issue, however, and adherence to past practice thus was impossible. Therefore, according to the district court, Calvin Klein did not assent to the limitation clause for this shipment.

In reviewing Calvin Klein's alternative public policy argument for avoiding enforcement of the limitation clause, the district court determined that New York cases voiding exculpatory provisions where gross negligence was shown did not control the situation where the parties merely agreed to a limitation of liability. According to the court, "contractual limitation of liability, if one were shown to exist, would not be voided by defendant's gross negligence...." Damages were awarded to

Calvin Klein in the amount of $101,542.62, the full value of the lost shipment.

While we agree with the district court that gross negligence does not void a limitation of liability provision, we find that the parties agreed that such a provision was in effect for this carriage. For the reasons below, we reverse and remand.

## DISCUSSION

On this appeal, Trylon contends that the district court incorrectly held that no agreement existed as to the limitation of liability. Trylon further argues that the limitation is enforceable despite its conceded gross negligence. Calvin Klein contends that the district court correctly held that, under New York law, no agreement existed between the parties as to a liability limit for this stolen shipment. Alternatively, Calvin Klein points to two different public policy reasons why the limitation provision, if there is one, is unenforceable. First, Trylon's gross negligence resulted in the loss, and public policy prohibits the enforcement of an exculpatory provision which attempts to relieve the contracting party of liability under such circumstances. Second, the $50 limit was unreasonably low and therefore unenforceable. We address these contentions.

A common carrier, *see* N.Y. Transp. Law § 2(8) (McKinney Supp.1989), under New York law is strictly liable for the loss of goods in its custody. "Where the loss is not due to the excepted causes [that is, act of God or public enemy, inherent nature of goods, or shipper's fault], it is immaterial whether the carrier was negligent or not...." *American Mach. & Foundry Co. v. Santini Bros.*, 54 Misc.2d 886, 889, 283 N.Y.S.2d 574, 576 (Sup.Ct.1967) (quoting 13 C.J.S. *Carriers* § 71, at 132 (1939)), *aff'd mem.*, 46 A.D.2d 844, 362 N.Y.S.2d 402 (1st Dep't 1974). Even in the case of loss from theft by third parties, liability may be imposed upon a negligent common carrier. *F.A. Straus & Co. v. Canadian Pac. Ry.*, 254 N.Y. 407, 173 N.E. 564 (1930).

A shipper and a common carrier may contract to limit the carrier's liability in cases of loss to an amount agreed to by the

parties, 17 N.Y.Jur.2d *Carriers* § 294 (1981), so long as the language of the limitation is clear, the shipper is aware of the terms of the limitation, and the shipper can change the terms by indicating the true value of the goods being shipped. N.Y.U. C.C. § 7–309(2); *see also La Primadora Cigar Corp. v. Wolf Delivery Serv., Inc.,* 28 Misc.2d 586, 587, 208 N.Y.S.2d 107, 108 (App. Term 1st Dep't 1960) (per curiam); *cf.* 49 U.S.C.App. § 10730(b)(1) (1982 & Supp. V 1987) (similar scheme under Interstate Commerce Act). Such a limitation agreement is generally valid and enforceable despite carrier negligence. *See* 14 Am.Jur.2d *Carriers* § 561 (1964). The limitation of liability provision involved here clearly provides that, at the time of delivery, the shipper may increase the limitation by written notice of the value of the goods to be delivered and by payment of a commensurately higher fee.

■ The parties stipulated to the fact that the $50 limitation of liability was a term and condition of carriage and that Calvin Klein was aware of that limitation. This stipulated fact removes the first issue, namely whether an agreement existed as to a liability limitation between the parties, from this case. Calvin Klein's argument that it never previously acknowledged this limitation by accepting only $50 in settlement of a larger loss does not alter this explicit stipulation. "[A] stipulation of fact that is fairly entered into is controlling on the parties and the court is bound to enforce it." *Fisher v. First Stamford Bank and Trust Co.,* 751 F.2d 519, 523 (2d Cir. 1984); *see Stanley Works v. Federal Trade Comm'n,* 469 F.2d 498, 506 (2d Cir.1972), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2750, 37 L.Ed.2d 155 (1973). Neither party here has argued that the stipulation was unfairly entered into. The stipulation was factually correct in reiterating the terms of the customary agreement between Trylon and Calvin Klein and did not create legal conclusions binding on this Court. *Cf. Swift & Co. v. Hocking Valley Ry.,* 243 U.S. 281, 287, 289, 37 S.Ct. 287, 289, 289–90, 61 L.Ed. 722 (1917). The parties, and this Court, are bound by the facts set out in the stipula-

tion. The district court erred in not accepting the limitation of liability as stipulated.

■ The remaining issue concerns the enforceability of the limitation clause in light of Trylon's conceded gross negligence. The district court considered that, assuming an agreement between the parties as to Trylon's liability, Trylon's gross negligence would not avoid the enforcement of a limitation clause.

The district court found that New York law, as opposed to federal interstate commerce law, applies in this case. The parties do not seriously contest this choice of law. With the choice thus unchallenged, we must apply both established New York law as well as our belief of how the New York Court of Appeals would rule if this case were before it:

A federal court sitting in diversity must follow the law directed by the [highest court] of the state whose law is found to be applicable, and if there is no direct decision by the highest court of that state, the federal court should determine what it believes that state's highest court would find if the issue were before it.

*Plummer v. Lederle Labs.,* 819 F.2d 349, 355 (2d Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987).

Although the New York Court of Appeals has addressed a limitation of liability provision in the context of a contract between an airline and a passenger, *see Conklin v. Canadian–Colonial Airways,* 266 N.Y. 244, 194 N.E. 692 (1935) (refusing to enforce unilateral limitation provision for death of passenger due to defendant's negligence), that court has never been called upon to enforce a limitation provision in the case of a grossly negligent common carrier of goods. The various departments of the Appellate Division of the New York State Supreme Court have addressed whether gross negligence bars enforcement of limitations of liability in the context of contracts for the installation, maintenance and monitoring of burglar alarm systems and are divided on the issue. *Compare Koos Van Den Akker Atelier, Ltd. v. Honeywell Protection Servs.,* 148

A.D.2d 359, 361, 539 N.Y.S.2d 7, 8 (1st Dep't 1989) (mem.) (enforcing limitation despite gross negligence) *and Sol E. Feldman Furs, Inc. v. Jewelers Protection Servs. Ltd.*, 134 A.D.2d 171, 172, 520 N.Y.S.2d 760, 761 (1st Dep't 1987) (even if gross negligence were established, plaintiff's recovery would be limited by limitation clause) *with Gentile v. Garden City Alarm Co.*, 147 A.D.2d 124, 132, 541 N.Y.S.2d 505, 510 (2d Dep't 1989) (limitation clause cannot limit liability for gross negligence) *and Arell's Fine Jewelers, Inc. v. Honeywell, Inc.*, 147 A.D.2d 922, 923, 537 N.Y.S.2d 365, 365–66 (4th Dep't 1989) (finding "no significant distinction" between complete exculpation and limitation "to a nominal sum," therefore limitation is ineffective). The First Department distinguished between exculpatory provisions and limitation provisions, indicating that the latter would be effective even if the former are unenforceable due to the contracting party's gross negligence. *See Feldman Furs*, 134 A.D.2d at 172, 520 N.Y.S.2d at 761; *cf. Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676, 487 N.E.2d 267, 267, 496 N.Y.S.2d 410, 410 (1985) (distinguishing between exculpatory provision and indemnity provision since latter provides some recovery). The other departments which have considered the question applied the holding of *Gross v. Sweet*, 49 N.Y.2d 102, 400 N.E.2d 306, 424 N.Y.S.2d 365 (1979), that "[a]greements which purport to exempt a party from liability for willful or grossly negligent acts are contrary to public policy and are void." *Arell's Fine Jewelers*, 147 A.D.2d at 923, 537 N.Y.S.2d at 365; *see Gentile*, 147 A.D.2d at 131, 541 N.Y.S.2d at 509–10.

Absent a rule of decision formulated by the New York Court of Appeals, we are not bound by the opinions issued by the state's lower courts. *Plummer*, 819 F.2d at 355; *see Stafford v. International Harvester Co.*, 668 F.2d 142, 148 (2d Cir.1981) (when applying state law in diversity actions, federal courts need not "rigidly or mechanically follow every state court pronouncement").

In the absence of direct New York authority, we must make our best esti-mate as to how New York's highest court would rule in this case. In making that determination, we are free to consider all the resources the highest court of the state could use, including decisions reached in other jurisdictions. *Francis v. INA Life Ins. Co. of New York*, 809 F.2d 183, 185 (2d Cir.1987) (citations omitted). We believe that the New York Court of Appeals would not differentiate between gross negligence and ordinary negligence in recognizing the validity of the limitation of liability in this case.

Since carriers are strictly liable for loss of shipments in their custody and are insurers of these goods, the degree of carrier negligence is immaterial. *See American Mach. & Foundry*, 54 Misc.2d at 889, 283 N.Y.S.2d at 576. The common carrier must exercise reasonable care in relation to the shipment in its custody. N.Y.U.C.C. § 7–309(1). Carriers can contract with their shipping customers on the amount of liability each party will bear for the loss of a shipment, regardless of the degree of carrier negligence. *See* N.Y.U.C.C. § 7–309(2) (allowing limitation of liability for losses from any cause save carrier conversion). Unlike the parachute school student, *see Gross*, 49 N.Y.2d 102, 400 N.E.2d 306, 424 N.Y.S.2d 365, or the merchant acquiring a burglar alarm, the shipper can calculate the specific amount of its potential damages in advance, declare the value of the shipment based on that calculation, and pay a commensurately higher rate to carry the goods, in effect buying additional insurance from the common carrier.

In this case, Calvin Klein and Trylon were business entities with an on-going commercial relationship involving numerous carriages of Calvin Klein's goods by Trylon. Where such entities deal with each other in a commercial setting, and no special relationship exists between the parties, clear limitations between them will be enforced. *Florence v. Merchants Cent. Alarm Co.*, 51 N.Y.2d 793, 795, 412 N.E.2d 1317, 1318, 433 N.Y.S.2d 91, 92 (1980). Here, each carriage was under the same terms and conditions as the last, including a limitation of Trylon's liability. *See La*

*Primadora Cigar*, 28 Misc.2d at 587, 208 N.Y.S.2d at 108 (court enforced limitation on shipper who possessed over five years of the carrier's manifests which included the $50 limitation). This is not a case in which the shipper was dealing with the common carrier for the first time or contracting under new or changed terms. Calvin Klein was aware of the terms and was free to adjust the limitation upon a written declaration of the value of a given shipment, but failed to do so with the shipment at issue here. Since Calvin Klein failed to adjust the limitation, the limitation applies here, and no public policy that dictates otherwise can be identified.

Calvin Klein now argues that the limitation is so low as to be void. Given the district court's conclusion that no valid agreement existed as to the limitation of liability, the court did not address the question of whether the amount of the limitation was reasonable as a matter of law. This amount is immaterial because Calvin Klein had the opportunity to negotiate the amount of coverage by declaring the value of the shipment. *Cf. Arell's Fine Jewelers*, 147 A.D.2d at 923, 537 N.Y.S.2d at 366. Commercial entities can easily negotiate the degree of risk each party will bear and which party will bear the cost of insurance. That this dispute actually involves who will bear the cost of insurance is illustrated by the fact that this case has been litigated not by the principal parties, but by their insurers. Calvin Klein could have increased Trylon's coverage by declaring the value of its shipment, but did not do so. The cases cited by Calvin Klein involve ocean shipments regulated by the Harter Act, 46 U.S.C.App. §§ 190–196 (1982 & Supp. V 1987), and the Carriage of Goods by Sea Act, 46 U.S.C.App. §§ 1300–1315, 1304(5) (1982 & Supp. V 1987) (mandating a minimum limitation of $500 per package), statutes which have no application here. *E.g., David Crystal, Inc. v. Cunard S.S. Co.*, 339 F.2d 295, 298 (2d Cir.1964), *cert. denied*, 380 U.S. 976, 85 S.Ct. 1339, 1340, 14 L.Ed.2d 271 (1965). The one New York State case Calvin Klein cites, *Ballet Lingerie Inc. v. Al Ferrari Inc.*, No. 12990/83, slip op. (N.Y.Sup.Ct., N.Y. Co. Aug. 16,

1983), involved a carrier's arbitrary limitation of $50 on any loss. The court held that the limitation violated the rule prohibiting carriers from setting arbitrary limitations without permitting the shipper to declare a greater value. *See F.A. Straus*, 254 N.Y. at 416, 173 N.E. at 568. Calvin Klein had the opportunity to declare a higher value and we find all of its arguments relating to the unreasonableness of the limitation to be without merit.

## CONCLUSION

We reverse and remand to the district court with instructions to enter judgment against defendant in the sum of $50.